UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE CRUZ ALONZO,

                    Petitioner,                           Case No. 1:16-cv-559

v.                                                Honorable Janet T. Neff

S.L. BURT,

                    Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Jose Cruz Alonzo is incarcerated at the Muskegon Correctional Facility. Petitioner pleaded guilty in the Kent County Circuit Court to two counts of assault with intent to commit great bodily harm less than murder, MICH. COMP. LAWS § 750.84, and one count of possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b.  On August 4, 2010, he was sentenced as a fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to two concurrent terms of 7 to 35 years on the assault convictions and a consecutive term of 2 years on the felony-firearm conviction.

At the time he committed the 2010 offenses, Petitioner was on parole for three 1997 convictions:  armed robbery, MICH. COMP. LAWS § 750.529; carjacking, MICH. COMP. LAWS § 750.529a; and felony firearm, MICH. COMP. LAWS § 750.227b.  His sentencing guidelines score was increased because he was on parole for the 1997 convictions.

Petitioner previously filed a habeas application challenging the 2010 sentences.  *See Alonzo v. Burt*, No. 1:14-cv-946 (W.D. Mich.).  In that action, he contended that he should not have been considered to be on parole at the time he was convicted of the 2010 offenses.  He argued that, as part of his 1997 convictions, he was jointly held responsible for the payment of restitution with other defendants.  At the time his parole was extended, the restitution had been fully paid by another defendant.  However, as a result of bookkeeping errors by the state, Petitioner was still shown as owing the restitution.  Petitioner contended that, because he was continued on parole solely because of the failure to pay restitution, the extension of parole was improper.  As a result, he argued, his sentence in the 2010 case should not have been increased due to his being on parole.  In an opinion,

judgment and order issued on May 17, 2016, this Court denied the petition for failure to raise a meritorious federal claim and denied a certificate of appealability.  *Id.* (ECF Nos. 13-15)

Petitioner filed the instant habeas application on or about May 13, 2016.[1]  Petitioner now challenges the 2007 decision to extend his parole on the 1997 convictions.  He raises the following two grounds for relief:

I.      THE MICHIGAN DEPARTMENT OF CORRECTIONS VIOLATED PETITIONER'S DUE PROCESS RIGHTS WHEN IT FAILED TO MAINTAIN ACCURATE RESTITUTION RECORDS.

II.     THE MDOC WRONGFULLY EXTENDED PAROLE, FAILED TO PROVIDE PRIOR NOTICE, BASED EXTENSION OF FALSE INFORMATION, VIOLATING DUE PROCESS RIGHTS PAROLE AMENDMENTS HAVE A LIBERTY INTEREST, AMENDMENTS WITHOUT HEARINGS UNCONSTITUTIONAL.

(Pet., ECF No. 1, PageID.6-7.)  Petitioner argues that he has exhausted his state-court remedies, as required under 28 U.S.C. § 2254(b)(2), by way of a declaratory-judgment action filed in the Ingham County Circuit Court on October 4, 2012.  (*See* Docket Sheet, *Cruz v. State of Mich.*, No. 12-001090-CZ-C30 (30th Mich. Cir. Ct.), ECF No. 2-1, PageID.132-136.)  In an opinion and order issued on April 8, 2013, the circuit court granted summary judgment to the defendant state, holding that the court lacked jurisdiction to grant the relief Petitioner sought: an alteration in his sentence for the 2010 convictions.  (Cir. Ct. Ord., ECF No. 2-1, PageID.139-140.)

---

[1]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner dated his application on May 13, 2016, and it was received by the Court on May 19, 2016.  Thus, it must have been handed to prison officials for mailing at some time between May 13 and 19, 2016.  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

### Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have

-4-

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

I.    Failure to Maintain Accurate Records of Restitution Payments

To the extent that Petitioner claims that the state improperly collected restitution from him in violation of its own statutes, administrative rules, and policy, his claim is not cognizable on habeas review.  The habeas statute provides that a federal court may entertain a habeas application by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010);

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

       Moreover,  the deprivation Petitioner suffered is not remediable on habeas review. The essential purpose of the writ of habeas corpus is to free individuals from wrongful restraints upon their liberty.  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Where a habeas petitioner is not claiming the right to be released from custody but is challenging the imposition of a fine or other costs, he may not bring a petition for writ of habeas corpus.  *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995).  Liability under a restitution order is like a fine-only conviction and is not a serious restraint on liberty sufficient to warrant habeas relief.  *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Tinder v. Paula*, 725 F.2d 801, 805 (1st Cir. 1984); *see also Mullins v. Birkett*, No. 2:09-cv-12515, 2010 WL 764386, at *3 (E.D. Mich. Mar. 4, 2010) (citing *Flores v. Hickman*, 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008) (holding that imposition of a restitution order as part of a California state sentence could not be challenged under the habeas statute because restitution did not affect the duration of habeas petitioner's state custody)).  Because the appropriate relief for the alleged error would be recovery of any excess restitution paid by Petitioner, not release from custody, a writ of habeas corpus would be inappropriate.  *Mullins*, 2010 WL 764386, at *2 (citing *United States v. Zaragoza*, 16 F. Supp. 2d 1111, 1112 (N.D. Ind. 1998); *see also United States v. Gianelli*, 543 F.3d 1178, 1184 n.7 (9th Cir. 2008) (stating that a federal prisoner "cannot present his claim for relief from [a] restitution order as a habeas petition because he is not seeking release from custody, and because review of restitution orders is not properly brought in a habeas petition").

II.     Wrongful Extension of Parole

Petitioner next asserts that the Michigan Parole Board wrongfully extended his parole, because the reason given for the extension, the failure to pay restitution, was inaccurate, given that the restitution had been fully paid.  Petitioner cites Mich. Comp. Laws § 791.242(1), which provides that:

> If a paroled prisoner has faithfully performed all of the conditions and obligations of parole for the period of time fixed in the order of parole, and has obeyed all of the rules and regulations adopted by the parole board, the prisoner has served the full sentence required. The parole board shall enter a final order of discharge and issue the paroled prisoner a certificate of discharge.

*Id.*

To the extent that Petitioner argues that the Michigan Parole Board violated state law, his claim is not cognizable in this action.  As previously discussed, a violation of state law is not a basis for relief under § 2254.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68 (citing 28 U.S.C. § 2241).

Petitioner, however, also contends that the extension of his parole violated his right to due process under the Constitution.  To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006).  Petitioner apparently claims that he has a liberty interest in discharge from parole on the date set forth in his first parole order, because his parole was extended

-7-

solely because he ostensibly owed additional restitution – a fact that was improperly determined due to mis-reporting by the courts and the MDOC.

There is no constitutional or inherent right to be released before the expiration of a prison sentence. *Greenholtz*, 442 U.S. at 7. Even the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in early release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). A liberty interest is present only if the petitioner has a "legitimate claim of entitlement to" it, a claim that can be created only by the operation of state law. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir.1991) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)).

In *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in release on parole. *Id.* at 1164-65. In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). More recently, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).

According to *Crump*, the most "salient factor" in determining whether a parole statute creates a liberty interest in early release on parole is "whether the statute contains mandatory language that creates a presumption of release when the designated findings are made." *Id.* at 399. "The mandatory language may be found in a statute, a regulation, or even 'policy statements . . . or other official promulgations' by parole or prison officials." *Id.* (quoting *Beard v. Livesay*, 798 F.2d

874, 877 (6th Cir. 1986)).  Petitioner argues that the mandatory language in Mich. Comp. Laws § 791.242(1) creates a liberty interest in discharge from parole, because it states that the parole board "shall" enter an order of discharge "if" the parolee has "faithfully performed all of the conditions and obligations of parole for the period of time fixed in the order of parole, and has obeyed all of the rules and regulations adopted by the parole board . . . ."  *Id.*  However, as with the grant of parole itself, the period of time set forth in the parole order is a matter of discretion.  The parole board was not required to parole Petitioner for any period of time, and its decision to give him a two-year period of parole did not limit its ability to extend that period.  Indeed, Michigan law makes clear that the parole board retains discretion to amend parole orders.  *See* Mich. Comp. Laws § 791.236(3) ("A parole order may be amended at the discretion of the parole board for cause.").  In addition, Michigan courts have held that the parole board can extend the parole period without a hearing.  *Lane v. Mich. Dep't of Corr., Parole Bd.*, 173 N.W.2d 209, 211 (Mich. 1970); *see also In re Wayne Cnty. Prosecutor*, 591 N.W.2d 359, 361 (Mich. Ct. App. 1998) ("Although the statutes no longer expressly so provide, the length of the parole period is generally discretionary with the Parole Board.").

Similarly, several courts have held that, because there is no liberty interest in early release on parole, then, by extension, there is no liberty interest in full release upon the expiration of a parole order.  *See Hulvey v. Sampson*, No. 1:10-cv-122, 2010 WL 4923488, at *2 (W.D. Mich. Nov. 1, 2010) ("Because Plaintiff has no liberty interest in parole, he cannot challenge the procedures by which his term of parole was extended."), *report and recommendation adopted*, 2010 WL 4923484 (Nov. 29, 2010); *Oakes v. Danhof*, No. 1:09-cv-952, 2010 WL 3734048 (W.D. Mich. June 22, 2010) (rejecting claim that the extension of parole violated due process, because there is

no liberty interest in obtaining release on parole), *report and recommendation adopted*, 2010 WL

3734031 (Sept. 20, 2010); *Williams v. Caruso*, No. 08-10044, 2009 WL 960198 (E.D. Mich. Apr.

6, 2009) (same); *Hershey v. Scutt*, No. 08-cv-15271, 2009 WL 2144322 (E.D. Mich. July 13, 2009)

(same); *Barnett v. Timmerman-Cooper*, No. 2:06-CV-673, 2008 WL 420042 (S.D. Ohio Feb. 14,

2008) (same for Ohio).  In other words, the parole order created, at most, a mere expectancy that

Petitioner would be released at the end of the specified parole term, if he complied with all parole

terms.  It did not further constrain the parole board's ability to dictate the length of his parole, such

that he was automatically entitled to release when the term expired.  Consequently, the parole board

did not violate Petitioner's right to due process when it extended his term of parole without advance

notice or a hearing.[2]

Petitioner cites *Morrissey v. Brewer*, 408 U.S. 471 (1972), in which the Supreme

Court held that a parolee is entitled to due process before his parole is revoked and he is returned

to prison for a parole violation.  The Court reasoned that "[w]hether any procedural protections are

due depends on the extent to which an individual will be condemned to suffer grievous loss." *Id.*

at 481.  A parolee is due some process before being returned to prison, because "the liberty of a

parolee . . . includes many of the core values of unqualified liberty, and [parole] termination inflicts

a grievous loss on the parolee[.]" *Id.* at 482.  In contrast, Petitioner does not complain about a

"grievous loss" of liberty; instead, he complains that the Michigan Parole Board maintained his

---

[2]The Court also notes that, even if the primary justification for the parole extension was Petitioner's continuing obligation on restitution (*see* ECF No. 2-1, Page ID.50), Petitioner's own documents demonstrate that he did not fully comply with all conditions of his parole during his entire parole period.  According to the "Parole Action Request" issued by Petitioner's parole officer on September 29, 2009, although the officer recommended the termination of parole, she noted that Petitioner "has had trouble with remaining drug free.  Over the course of his parole he has picked up several technical violations which include assaultive behavior an[d] positive drug screens."  (*See* ECF No. 2-1, PageID.113.) Petitioner's argument that he complied with all conditions of parole therefore appears inaccurate.

status as a parolee.  Consequently, *Morrissey* is distinguishable.  *Cf. Akrawi v. Remillet*, 504 F. App'x 450, 452-53 (6th Cir. 2012) (holding, for purposes of qualified immunity, that *Morrissey* does not clearly establish a right to due process when being returned to parole).  Petitioner has identified no decision by the Supreme Court, or any other federal court, holding that a parolee is entitled to due process when his term of parole is extended beyond the date set forth in a parole order.  *See King v. N.Y. State Div. of Parole*, 260 F. App'x 375, 379-80 (2d Cir. 2008) (rejecting due process claim where a parolee was mistakenly discharged and then returned to parole, because of a "total absence of authority" in support of the claim).  Thus, the state court's decision was not contrary to, nor did it involve an unreasonable application of, "clearly established Federal law" within the meaning of 28 U.S.C. § 2254(d)(1).[3]

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination

---

[3]The Court also notes that Petitioner's challenge to his 2007 parole extension undoubtedly is time-barred under the one-year statute of limitations provided by the AEDPA. *See* 28 U.S.C. § 2244(d)(1)(A) (providing that the one-year period runs from the time the state-court decision is final, arguably, Mar. 19, 2007); § 2244(d)(1)(D) (providing that the period of limitations runs from the date on which the factual predicate of the claim could have been discovered, which Petitioner represents was September 2009).  Petitioner did not even attempt to challenge his extended parole until he filed a declaratory judgment action in the Ingham County Circuit Court on October 4, 2012, three years after he discovered his restitution had been paid.  As a result, even if Petitioner's challenge to the extension of his parole period were cognizable on habeas review (independent of his challenge to his 2010 convictions, which were decided in *Alonzo v. Burt*, No. 1:14-cv-946 (W.D. Mich. May 17, 2016)), his petition would not be timely filed.

that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

-12-

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   July 21, 2016            /s/ Janet T. Neff
                                  Janet T. Neff
                                  United States District Judge

-13-